# Exhibit A-2
# Complaint

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Maren Nelson

Electronically FILED by Superior Court of California, County of Los Angeles on 10/21/2021 04:00 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Drew,Deputy Clerk

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA 330090)
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320
Fax: 786-623-0915

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Sophia G. Gold (CA Bar No. 307971)
sgold@kalielgold.com
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783

*Attorneys for Plaintiff and the Putative Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LATONYA DAWSON SPRINGFIELD, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS FINANCIAL COMPANY, INC.,<br><br>Defendant. | CASE NO.:  21STCV38925<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff LaTonya Dawson Springfield files this action on behalf of herself and on behalf of all others similarly situated and alleges as follows upon personal knowledge with respect to Plaintiff's own acts and based upon information and belief as to all other matters.

**NATURE OF THE CASE**

1.       Plaintiff brings this action on behalf of herself and all others similarly situated arising from Defendant General Motors Financial Company, Inc.'s ("Defendant" or "GM Financial") practice of collecting and failing to refund unearned fees from Guaranteed Asset Protection Waiver Addendums ("GAP Waiver Addendum") in breach of its contracts with consumers.

2.       Under the terms of its contracts with consumers, GM Financial is required to refund to consumers all unearned fees for GAP Waiver Addendums when consumers pay off their automobile finance agreements early.

3.       In breach of that promise, and in contravention of state statute, GM Financial, as a matter of policy, fails to refund consumers of unearned fees when finance agreements terminate early.

4.       As a result of this practice, GM Financial knowingly collects and retains millions of dollars per year in unearned fees from automobile purchasers.

5.       GM Financial's policy and practice of retaining these unearned fees related to GAP Waiver Addendums when the underlying automobile loan is paid off early constitutes a breach of contract and an unfair business practice in violation of state consumer protection law.

6.       Plaintiff, on behalf of herself and the Class, seeks to end GM Financial's practices and force it to refund unearned GAP fees. Plaintiff seeks damages, restitution, and injunctive relief on behalf of the general public.

**PARTIES**

7.       Plaintiff LaTonya Dawson Springfield resides in Van Nuys, California, and did at all relevant times during the conduct alleged in this Complaint.

8.       Defendant General Motors Financial Company, Inc. is incorporated in Delaware and

is headquartered at 801 Cherry Street, Suite 3600, Fort Worth, Texas 76102-6855.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over Defendant and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because this case is a cause not given by statute to the other trial courts.

10.     Plaintiff is informed and believes that the State of California has personal jurisdiction over the Defendant named in the action because Defendant conducts sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the franchise ownership and operation of about 4,500 dealership store locations nationwide, including in the County of Los Angeles, which has caused both obligations and liability of Defendant to arise in the County of Los Angeles.

11.     The amount in controversy exceeds the jurisdictional minimum of this Court.

## FACTUAL ALLEGATIONS

**A.     GAP Waivers**

12.     If a consumer gets into an accident and their car is deemed a "total loss," or if a consumer's car is stolen, the amount the consumer owes on their car loan may end up being more than the amount the insurance company is willing to pay for the consumer's loss. This difference between what an insurer is willing to pay and what the consumer still owes is known as the "gap."

13.     For both consumers and creditors, the risk that a consumer will not be able to cover the "gap" often makes financing untenable. Enter GAP products. GAP products allow consumers to cover the "gap" between the amount owed to the creditor and the proceeds from the insurance policy.

14.     GAP products were first introduced in the 1980s and have become increasingly popular over time. There are generally two types of GAP products. The first is GAP insurance. GAP insurance is a contract between an insurance company and a consumer, in which the insurer agrees to cover the consumer's GAP in the event of a total loss of the vehicle. With GAP insurance, if a total loss occurs and the current value of the vehicle is worth less than the amount owed to the creditor, then the insurance company will pay the creditor the difference. In other words, the

CLASS ACTION COMPLAINT

insurance company is paying off the loan balance on the consumer's behalf. The consumer pays insurance premiums directly to the insurance company for this coverage. This case does not concern GAP insurance.

15. Instead, this case concerns GAP Waivers. GAP Waivers were developed as an alternative to GAP Insurance. Unlike GAP Insurance, GAP Waivers are a "debt cancellation agreement" rather than insurance, because with a GAP Waiver, the creditor agrees to write off the "gap" in the event of a "total loss" or if the vehicle is stolen and the insurance proceeds are insufficient to pay off the loan. The development of GAP Waivers have generally allowed the automobile industry to circumvent insurance regulations and licensing requirements while offering what is only a slightly modified version of GAP insurance.

16. To obtain a GAP Waiver, the consumer and the vehicle seller, or dealer, execute a GAP Waiver form. The GAP Waiver forms are form contracts that are offered to consumers on a take-it-or-leave-it basis. The Gap Waiver form provides that if a consumer suffers a total loss, and the insurance payout for the vehicle is insufficient to pay off the remaining loan balance, then the creditor on the car financing agreement will agree to waive the difference, provided the consumer pays a fee.

17. These GAP fees are included as a separate line item in the vehicle purchase finance agreement and are incrementally paid in monthly installments by the consumer over the life of the loan, with interest, along with the rest of the purchase price of the vehicle.

18. Importantly, GM Financial's GAP Waiver Addendum provides that if the car finance agreement is paid off prior to the end of the full loan term, then the GAP Waiver Addendum will terminate, and then the consumer is entitled to a refund of the unused portion of the GAP Waiver Addendum fees. Such a provision makes sense: consumers should not have to pay for a service they no longer need and derive no benefit from.

19. For example, if the total GAP fees for four years of GAP coverage are $1,000, but the consumer pays off their finance agreement in two years, then the consumer would be entitled to a $500 refund for the unused half of their GAP coverage. These GAP fees are considered "unearned" because once the finance agreement is paid off early, there is no possibility of a GAP

1    and thus the consumer does not receive anything of value by paying for the GAP protection.

2        **B.    GM Financial's Role as the Creditor on Finance Agreements with GAP**

3              **Waiver Addendums**

4        20.    As noted above, the consumer initially enters the vehicle purchase finance

5    agreement and GAP Waiver Addendum with the dealer—who is the initial "creditor" on the loan.

6    But the dealer then sells and assigns the finance agreement with the GAP Waiver Addendum to a

7    financial institution, like GM Financial. Thereafter, the consumer's payments and interactions

8    concerning the finance agreement are with GM Financial. Once GM Financial purchases the

9    finance agreement and GAP Waiver Addendum, GM Financial becomes the "creditor" on the loan,

10   legally assuming the benefits and contractual obligations under the finance agreement and GAP

11   Waiver Addendum. This includes the obligation to refund any unearned GAP fees it collects

12   because of the early termination of the finance agreement.

13       21.    In this case, Plaintiff purchased her vehicle from Camacho Mitsubishi, a dealership

14   located in Palmdale, California.

15       22.    It is apparent from the vehicle financing agreement whether the consumer purchased

16   a GAP Waiver. The front page of the financing agreement generally indicates if it includes a GAP

17   Waiver, and the agreement will also separately list the total amount of the GAP fees in a breakdown

18   of the amount being financed by the consumer. GM Financial also receives a copy of the

19   consumer's finance agreement and GAP Waiver Addendum agreement from the dealer. As a result,

20   GM Financial knows which financing agreements have GAP Waiver Addendums.

21       23.    Throughout the term of the loan, the payoff amount includes the remaining cost of

22   the GAP Waiver Addendum, which is included in the aggregate amount financed by the consumer

23   when they purchase the vehicle. Thus, when a consumer prepays their vehicle loans in full, the total

24   payoff amount to GM Financial includes the full remaining cost of the GAP Waiver Addendum,

25   even though the consumer derives no benefit from paying that cost. GM Financial then fails to

26   provide any credit or refund for the unearned GAP Waiver Addendum fees, despite knowing that

27   those fees are unearned because the consumer prepaid their loan and terminated the financing

28   agreement.

24.     GM Financial knows consumers are entitled to a refund of unearned GAP fees when they pay off their finance agreement early, but it collects the unearned GAP fees anyway. This has enabled GM Financial to collect and keep millions of dollars in unearned GAP fees that rightfully belong to their consumers.

**C.     Plaintiff's GAP Waiver Addendum with GM Financial**

25.     On or about June 19, 2018, Plaintiff purchased a used 2015 Honda Civic, VIN 19XFBF58FE265557, (the "Vehicle") from a dealer, Camacho Mitsubishi located in Palmdale, California. Ms. Dawson Springfield is listed as the Vehicle's purchaser[1] on the Retail Installment Sales Contract, (the "Contract").

26.     Ms. Dawson Springfield purchased the Vehicle for a total sale price of $22,354.32, paying $3,000.00 down. The total amount financed was $13,009.13 with an interest rate of 13.9% APR, paid over 71 months at $268.81 per month beginning on August 3, 2018. Thus, the loan term was set to end on approximately July 3, 2024.

27.     As part of the Contract, Ms. Dawson Springfield purchased the optional GAP Waiver Addendum for a total of $495.00. That $495.00 was included in the total finance amount.

28.     The GAP Waiver Addendum stated that "This Guaranteed Asset Protection (GAP) Addendum amends the Retail Installment Sales/Loan/Lease Contract (hereafter referred to as the "Contract"). This GAP Addendum is between the Customer/Borrower (I, You or Your) and the Dealer/Financial Institution (We, Us or Our) ... Although not required to do so, You have elected to participate in Our GAP Program." Ms. Dawson Springfield signed the GAP Waiver Addendum, agreeing to purchase the voluntary GAP Waiver Addendum.

29.     The dealer, Camacho Mitsubishi, then assigned the financing agreement and GAP addendum to GM Financial. Thus, Camacho Mitsubishi is no longer a party to the agreement.

30.     The GAP Waiver Addendum that Ms. Dawson Springfield purchased was provided by Express Systems, Inc., with "AmeriCredit/GM Financial"[2] listed as the creditor on that agreement at the time Ms. Dawson Springfield purchased it.

[1] Rosttell Douglas Springfield, Plaintiff's husband, is listed as the vehicle's co-purchaser on the Contract.
[2] AmeriCredit is a trademark of Defendant General Motors Financial Company, Inc.

- 6 -
CLASS ACTION COMPLAINT

31.     The GAP Waiver Addendum also provides that the contract may be cancelled or terminated at the will of the purchaser. The GAP Waiver Addendum unequivocally states:

> YOUR RIGHT TO CANCEL: To cancel GAP at any time, or in the event of the early termination of Your Contract with the Lienholder, You must provide written notice of this cancellation or early termination of Your Contract to the Us, the Lienholder, or the GAP Administrator within 90 days of Your decision to cancel or the occurrence of the event causing the early termination of Contract. If You notify Us, the Lienholder, or the GAP Administrator within 30 days of the Date of Contract, You will receive a full refund/credit of the GAP Purchase Price. If You cancel after 30 days, You will receive a refund/credit of the unused portion of the GAP Purchase Price calculated by the Pro Rata method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee (state restrictions apply). We will refund all charges to the Lienholder listed above unless proof of payoff is submitted; any refund of the purchase price for a waiver that was included in the financing of the motor vehicle may be applied by the creditor as a reduction to reduce the overall amount owed under the finance agreement, rather than applying the refund strictly to the purchase price of the waiver. GAP was included in the financing of the motor vehicle loan. If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the Administrator at (800) 705-4001. This GAP Addendum will not be reinstated after a cancellation has been processed. In the event of a Total Loss, the GAP Purchase Price will be considered fully earned and no refund will be available (state exceptions apply).

32.     Thus, the GAP Waiver Addendum required GM Financial to refund the unearned GAP fees to Ms. Dawson Springfield.

33.     On approximately March 6, 2021, Ms. Dawson Springfield paid off the remaining balance on her Vehicle loan, thereby satisfying the Contract in full and cancelling the GAP Waiver Addendum contract before the full term of the loan had passed.

34.     But despite prepaying the Contract in full approximately 40 months early, Ms. Dawson Springfield did not receive a refund of a pro rata share of the $495.00 GAP fee.

35.     As a result, GM Financial wrongfully retained unearned GAP fees from Ms. Dawson Springfield.

///

///

///

///

**CLASS ACTION ALLEGATIONS**

36.     Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated (the "Nationwide Class"). The Class includes:

> All persons who, during the applicable statute of limitations, entered into finance agreements with GAP Waiver Addendums that were assigned to GM Financial and who paid off their finance agreements before the end of the loan term but did not receive a refund of unearned GAP fees.

37.     Plaintiff also brings this action on behalf of herself and as a class action on behalf of the following class of consumers (the "California Subclass"):

> All persons who, during the applicable statute of limitations, entered into finance agreements in the State of California with GAP Waiver Addendums that were assigned to GM Financial and who paid off their finance agreements before the end of the loan term but did not receive a refund of unearned GAP fees.

38.     The aforementioned Nationwide Class and California Subclass are referred to herein as the "Class."

39.     Excluded from the proposed Class are: (a) Defendants and their agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiff and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

40.     Plaintiff reserves the right to revise the definition of the Class based upon subsequently discovered information.

41.     The members of the proposed Class are so numerous that joinder of all members would be impractical. The proposed Class likely contain thousands of members. The precise number of class members can be ascertained through discovery, which will include GM Financial's records.

42.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and members of the Class have been injured by the same wrongful practices of GM Financial. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

43.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained class counsel who are experienced and qualified in

prosecuting class actions. Neither Plaintiff nor her attorneys have any interests contrary to or in conflict with the Class.

44.   There are common questions of law and fact that predominate over any questions affecting only individual members of the Class, including:

      a.      Whether GM Financial had a policy or practice of failing to refund unearned GAP Waiver Addendum fees on finance agreements assigned to GM Financial;

      b.      Whether GM Financial breached its contract with Plaintiff and the Class by failing to refund unearned GAP Waiver Addendum fees;

      c.      Whether GM Financial was unjustly enriched;

      d.      Whether GM Financial violated state consumer protection statutes;

      e.      The damages to which Plaintiff and the class are entitled.

45.   A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically infeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized actions would result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and the court system because that would result from multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

46.   GM Financial has, or has access to, contact information for members of the Class which may be used for the purpose of providing notice of the pendency of this action.

///

## CAUSES OF ACTION

## COUNT ONE

**BREACH OF CONTRACT INCLUDING BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiff and the Nationwide Class or, in the alternative, the California Subclass)**

47.     Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

48.     Plaintiff and members of the Class entered into finance agreements with GAP Waiver Addendums that were assigned to GM Financial.

49.     GM Financial breached the terms of the contract when it assessed and failed to refund Plaintiff and the Class unearned GAP fees.

50.     Further, under the law of each of the states where GM Financial does business, an implied covenant of good faith and fair dealing governs every contract. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

51.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

52.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

53.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

54.     Defendant breached the covenant of good faith and fair dealing when it assessed and collected and failed to refund unearned GAP fees.

55. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

56. Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the contract.

57. Lest there be any doubt, by way of this Complaint, Plaintiff hereby provides notice on behalf of herself and the putative class of her and class members' right to receive a refund under the contract.

58. GM Financial has therefore received written notice that Plaintiff and the members of the Class paid off their finance agreements early, thereby entitling them to a refund of any unearned GAP fees.

59. Plaintiff and the members of the Class were harmed because GM Financial failed to refund the unearned GAP fees after the early payoff of the finance agreements and failed to pay the interest that accrued on those unpaid amounts.

60. GM Financial is liable to Plaintiff and the members of the Class for the damages they suffered as a direct result of GM Financial's collection and failure to promptly refund the unearned GAP fees, as well as the interest that accrued on those unpaid amounts.

## COUNT TWO

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
#### (On Behalf of Plaintiff and the Nationwide Class or, in the alternative, the California Subclass)

61. Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein. Plaintiff brings this claim for violation of California Business and Professions Code 17200 *et seq.* (the "UCL") on behalf of herself and the members of the class.

62. The UCL prohibits acts of "unfair competition," including any unfair, fraudulent or unlawful business practice.

63. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." GM Financial's conduct violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

64. The UCL imposes strict liability. Plaintiff need not prove that GM Financial

intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

65.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

66.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

67.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

68.    GM Financial committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting the amount consumers owed GM Financial with respect to unearned GAP fees. Plaintiff relied on these misrepresentations to her detriment.

69.    Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

70.    The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

71.    Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act.

72.    Defendant's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

73.    As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that

1 | they continue overpaying Defendant.

2 |     74.    As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been

3 | unjustly enriched and should be required to disgorge its unjust profits and make restitution to

4 | Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

5 |     75.    Pursuant to California Business & Professions Code §§ 17203 and 17500, Plaintiff

6 | and the members of the Class, on behalf of the general public, seek an order of this Court enjoining

7 | Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent

8 | practices.

9 | **COUNT THREE**

10 | **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**(On Behalf of Plaintiff and the Nationwide Class or, in the alternative,**
11 | **the California Subclass)**

12 |     76.    Plaintiff hereby repeats, realleges, and incorporates by reference each and every

13 | allegation contained above as though fully set forth herein.

14 |     77.    This cause of action is brought pursuant to the Consumers Legal Remedies Act

15 | (CLRA), California Civil Code § 1750, *et seq.* Plaintiff and each member of the proposed Class

16 | are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of GAP Waivers

17 | were "transactions" within the meaning of California Civil Code § 1761(e). GAP Waivers are a

18 | "service" within the meaning of California Civil Code § 1761(b).

19 |     78.    Defendant violated and continues to violate the CLRA by engaging in the following

20 | practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class

21 | which were intended to result in, and did result in, the sale of GAP Waivers:

22 |     a.    "Representing that goods or services have . . . characteristics . . . that they

23 |     do not have" (a)(5); and

24 |     b.    "Advertising goods or services with intent not to sell them as advertised"

25 |     (a)(9).

26 |     79.    Specifically, Defendant failed to disclose to customers that it would not refund

27 | unearned GAP fees at the time the Contract was fully paid.

28 |     80.    GM Financial continues to violate the CLRA and continues to injure the public by

misleading consumers about its GAP fees and by failing to refund unearned GAP fees. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent GM Financial from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

81.     In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

82.     Pursuant to § 1782(a) of the CLRA, concurrent with the filing of this Complaint, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only public injunctive relief. Specifically, Plaintiff seeks an order enjoining Defendant from continuing to collect and failing to promptly refund unearned GAP fees after the early payoff of the finance agreement.

## COUNT FOUR

### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Nationwide Class or, in the alternative, the California Subclass)**

83.     Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

84.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

85.     Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant unearned GAP fees.

86.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

87.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

88.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and the Class seeks judgment in an amount to be determined at trial, as follows:

(a)     For public injunctive relief, enjoining Defendant from continuing the unlawful practices set forth above;

(b)     For declaratory and injunctive relief as set forth above;

(c)     For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)     For compensatory damages according to proof;

(e)     For punitive damages according to proof;

(f)     For reasonable attorneys' fees and costs of suit;

(g)     For pre-judgment interest; and

(h)     Awarding such other and further relief as this Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: October 20, 2021

Respectfully submitted,
**EDELSBERG LAW, P.A.**

By:*/s/ Scott Edelsberg*
Scott Edelsberg

**KALIELGOLD PLLC**
Jeffrey D. Kaliel
Sophia G. Gold
*Attorneys for Plaintiff and the Putative Class*

- 15 -
CLASS ACTION COMPLAINT